IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAYNE MORRIS, et al.**  )<br> )<br> )<br>**Plaintiffs,**  )<br> )<br>vs.  )<br> )<br>**AHMAD SA'ID KHADR, et al.**  )<br> )<br> )<br>**Defendants.**  )<br>_____) | **Civ. No. 06-MC-481 (RCL)** |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR WRIT OF EXECUTION**

**INTRODUCTION**

The United States, through its undersigned attorneys, respectfully requests that this Court deny Plaintiffs' motion for writ of execution. After obtaining a default judgment against Ahmad Sa'id Khadr in the United States District Court for the District of Utah, Plaintiffs filed this motion for writ of execution against the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), seeking the assets of Mr. Khadr.

The United States in no way condones the actions giving rise to the judgment that forms the basis for the writ at issue. However, serving a writ on an agency of the United States is not an appropriate mechanism for satisfying the underlying judgment against Mr. Khadr and, accordingly, the motion for writ of execution must be denied. First, the United States has not waived its sovereign immunity as to Plaintiffs' proposed writ of execution, so the motion should be denied as seeking relief beyond this Court's jurisdiction. Second, the writ cannot reach property that is merely regulated or blocked by the United States.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.   The Underlying Case**

On February 16, 2006, Judge Paul Cassell from the United States District Court for the District of Utah entered a default judgment against Ahmad Sa'id Khadr in the amount of $102.6 million pursuant to the Anti-Terrorism Act. Mem. Op. & Order Granting Mot. for Default J., Doc. #1-3 (Nov. 3, 2006); *see Morris, et al. v. Khadr, et al.*, Case No. 2:04-CV-00723.

On September 19, 2007, Plaintiffs filed the present motion for writ of execution. The proposed writ appears to issue against OFAC and command the United States Marshal to "collect the Judgment of $102,670,473.74, by levying upon any assets owned by Ahmad Sa'id Khadr . . . and frozen by the Office of Foreign Assets Control. . ." Doc. #2-2 (Sept. 19, 2007).

**2.   The Asset Blocking Process**

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, authorizes the President to declare a national emergency when an unusual and extraordinary threat to the United States arises that originates in whole or substantial part outside the United States. Once such an emergency is declared, IEEPA grants the President additional powers "to investigate, regulate, or prohibit transactions in foreign exchange, banking transfers, and importation and exportation of currency or securities by persons or with respect to property, subject to the jurisdiction of the United States." *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004); *see also* 50 U.S.C. § 1702(a)(1)(A).[1]

---

[1] IEEPA also provides that the Executive may: "investigate, block during pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or

In 2001, pursuant to IEEPA, the President issued an Executive Order, No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001), declaring that "grave acts of terrorism and threats of terrorism committed by foreign terrorists, including the terrorist attacks in New York, Pennsylvania, and the Pentagon committed on September 11, 2001 . . . constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." *Id*. Executive Order 13,224 and the OFAC regulations implementing the order create a category of "Specially Designated Global Terrorists" ("SDGTs"), whose property and interests in property subject to the jurisdiction of the United States are blocked. 31 C.F.R. § 594.201. Additional SDGTs may be designated on the ground that they "act for or on behalf of" or are "owned or controlled by" SDGTs, or that they "assist in, sponsor, or provide . . . support for," or are "otherwise associated" with SDGTs. 66 Fed. Reg. at 49,079-80. Finally, the Executive Order delegates authority to the Secretary of Treasury, who, in consultation with the Attorney General and Secretary of State, may "employ all powers granted to the President by IEEPA and [the United Nations Participation Act]." *Id*. at 49,081.

The Department of Treasury, through OFAC, has exercised the authority delegated to it under this Executive Order, and has designated various entities and persons, including Mr. Khadr, as SDGTs. Ex. 1, at 2 (listed as Ahmad Sa'id Al-Kadr). The designations have resulted in the legal requirement that the assets of each designated person or entity, as well as of any assets in which each designated person or entity has an interest, in the United States or the

---

dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B).

possession or control of a U.S. person be blocked. Under OFAC regulations, entities who hold blocked assets, such as a bank or other financial institution, must report particulars regarding that property to OFAC, including the name of the owner of the property, its account number, and its actual or estimated value. 31 C.F.R. § 501.603. OFAC, in turn, reports the sum of blocked assets to Congress in an annual Terrorist Assets Report. *Id*.

**3.     The Terrorism Risk Insurance Act of 2002**

Plaintiffs seek to attach any blocked assets of Mr. Khadr pursuant to Section 201 of the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, Title II, § 201, 116 Stat. 2322 (Nov. 26, 2002), which provides for the "[s]atisfaction of judgments from blocked assets of terrorists, terrorist organizations, and State sponsors of terrorism." Subsection (a) of this section specifically provides as follows:

> Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which the terrorist party is not immune . . . *the blocked assets of that terrorist party* (including the blocked assets of any agency or instrumentality of that terrorist party) *shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages* for which such terrorist party has been adjudged liable.

TRIA, § 201(a), 116 Stat. at 2337 (emphasis added). Section 201(d)(2)(A) defines the term "blocked asset" as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702)."

**ARGUMENT**

**I.    THIS WRIT PROCEEDING IS BARRED BY SOVEREIGN IMMUNITY**

The United States government has sovereign immunity and cannot be made subject to the writ of execution. "'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Sovereign immunity is jurisdictional in nature . . . [and] the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain that suit.'" *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

A writ of execution or attachment is a type of "civil process" for the collection of a judgment, and hence is a type of suit. *See Franchise Tax Bd. v. United States Postal Serv.*, 467 U.S. 512, 518 (1984) ("Garnishment and attachment commonly are part and parcel of the [civil] process, provided by statute, for the collection of debt.'") (quoting *FHA v. Burr*, 309 U.S. 242, 245 (1940)). Specifically, the writ of execution directs the United States Marshall to "collect the Judgment of $102,670,473.74, by levying upon any assets owned by Ahmad Sa'id Khadr . . . and frozen by the Office of Foreign Assets Control." Doc. #2-2 (Sept. 19, 2007). The writ clearly seeks to subject the garnishees to judicial process, and enforcement of the writs can be obtained only by bringing the garnishees into the jurisdiction of the courts.

"[T]he principles of sovereign immunity 'apply with equal force to attachments and garnishments.'" *Weinstein v. Islamic Republic of Iran*, 274 F. Supp. 2d 53, 56 (D.D.C. 2003) (quoting *Flatow v. Islamic Republic of Iran*, 74 F. Supp. 2d 18, 21 (D.D.C. 1999)). Even when the United States has actually set aside money for payment, sovereign immunity remains an

impenetrable shield to attachment or garnishment of those funds (except under certain circumstances not applicable here).  *See Blue Fox*, 525 U.S. at 264.

Although sovereign immunity <u>may</u> be waived, there is no waiver in this case.  Any waiver of the federal government's sovereign immunity must be "unequivocally expressed in statutory text . . . and will not be implied."  *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citations omitted); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed.") (internal quotation marks and citations omitted).  Such waivers must be "construed strictly in favor of the sovereign," and not "enlarge[d] beyond what the language [of the statute] requires."  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) (internal quotation marks and citations omitted); *see also Blue Fox*, 525 U.S. at 261 (waivers must be "strictly construed . . . in favor of the sovereign").  Accordingly, any ambiguities in the statutory text must be resolved in favor of immunity.  *United States v. Williams*, 514 U.S. 527, 531 (1995).

Section 201 of the TRIA, which has precipitated this writ of execution, contains no waiver of sovereign immunity.  *See Weinstein*, 274 F. Supp. 2d at 56-58, 62.  The Supreme Court has concluded that statutory text is the <u>only</u> place where a waiver of sovereign immunity can be found.  *Blue Fox*, 525 U.S. at 261.  Nothing in the statutory text indicates that Congress contemplated that the United States might be liable for judgments against terrorist parties.  Section 201(a) removes the regulatory bar on attachment of certain assets themselves, but does not unequivocally express the intent to make the United States liable in a court of law simply because it has issued a blocking order.  Vague language of preemption, such as "notwithstanding any other provision of law," is not sufficient to find an express waiver of sovereign immunity.

Nor can a general attachment statute, which purports to apply to all those holding assets of a terrorist nation or party, include the United States by inference.  As this Court previously has held, "section 201 of the Terrorism Risk Insurance Act does not provide an express waiver of federal sovereign immunity."  *Weinstein*, 274 F. Supp. at 62.  In fact, even if "funds [were] held in the U.S. Treasury" and "set aside or 'earmarked' for a specific purpose," they would "remain the property of the United States until the government elects to pay them to whom they are owed."  *Flatow*, 74 F. Supp. 2d at 21.

The nature of the proceeding at issue here underscores that any waiver of sovereign immunity should be particularly unequivocal.  One of the justifications behind the doctrine of sovereign immunity is to protect the sovereign from the disruption that would ensue if it were unreservedly subject to suit.  "[B]ut for the protection which [the principle of sovereign immunity] affords, the government would be unable to perform the various duties for which it was created."  *Nichols v. United States*, 74 U.S. (7 Wall.) 122, 126 (1868).  This principle applies with particular force in cases involving writs of execution because, under the Federal Rules of Civil Procedure, the federal government would, in the absence of immunity, be subject to the laws of fifty states, as well as the District of Columbia.  *See* Fed. R. Civ. 69 (execution proceedings "must accord with the procedure of the state where the court is located"); *see Buchanan v. Alexander*, 45 U.S. (4 How.) 20, 20 (1846) ("No government can sanction [allowing writs of attachment to divert public money from its legitimate and appropriate object].  At all times it would be found embarrassing and under some circumstances it might be fatal to the public service.").  No such unequivocal statement exists here, and therefore sovereign immunity has not been waived and bars these proceedings.

## II. THE UNITED STATES DOES NOT HAVE LEGAL POSSESSION OF BLOCKED ASSETS

Under two distinct bodies of case law, Plaintiffs' proposed writ cannot reach property that is merely regulated or blocked by the United States: (1) law concerning governmental blocking orders and (2) D.C. law concerning attachments. First, as this Court has recognized, "[a]ssets that have been frozen by the United States are not necessarily assets that are held by the United States, because the frozen assets might belong to some other entity." *Weinstein*, F. Supp. 2d at 57. A blocking order that is issued pursuant to IEEPA and implementing Executive Orders "does not constitute a seizure," and title to any blocked property does not vest in the government. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 78-79 (D.D.C. 2002); *see also Global Relief Found., Inc. v. O'Neill*, 207 F. Supp. 2d 779, 802 (N.D. Ill. 2002) ("[A] temporary blocking of assets does not constitute a taking because it is a temporary action and not a vesting of property in the United States."). "Vesting occurs when title to assets is transferred to the government; blocking does not transfer title but rather prohibits temporarily, transactions involving those assets." *Tran Qui Than v. Regan*, 658 F.2d 1296, 1304 (9th Cir. 1981).

Second, writs are executed under the state law in which they are served. The United States is not a proper garnishee under D.C. law because it does not have legal possession of blocked assets. OFAC undertook a blocking action against Mr. Khadr, but does not itself possess any of his assets. D.C. law provides that attachment may be levied "upon credits of the defendant, in the hands of a garnishee by serving the garnishee with a copy of the writ of attachment." D.C. Stat. § 16-546. Thus, the proper garnishee is one who has <u>possession of</u> the credits sought to be attached or garnished. *See United States v. Thornton*, 672 F.2d 101, 105 (D.C. Cir. 1982) (garnishment used to reach credits of the debtor "in the possession of a third

person"); *id*. at 107 (proper garnishee is one "who has possession of the credits of the defendant 'in (his) hands.'").

To the extent that Plaintiffs seek broadly to attach property that is not in the possession of United States government agencies, but merely within the jurisdiction of their regulatory authority, then these agencies are not the proper garnishees. Federal agencies (regardless of sovereign immunity issues) simply are not in "possession" of the property that they regulate for the purposes of garnishment proceedings. To hold otherwise would create as much of a disruption in government affairs as to disregard the doctrine of sovereign immunity. Therefore, the United States and/or its agencies are not proper garnishees for these funds.

Counsel for Plaintiffs apparently misinterpreted correspondence that was received from OFAC to mean that OFAC itself was in possession of (and would distribute) assets of Mr. Khadr. *See* Resp. to Request for Extension of Time to Respond, Doc. #10, at 2-3 ("The purpose of [filing for writs of execution] was to provide a means to access the funds held by the OFAC."). That is not the case. The May 22, 2007 letter to which Plaintiffs refer states that TRIA "permits a plaintiff who 'has obtained a judgment against a terrorist party on a claim based upon an act of terrorism' to attach 'the blocked assets of that terrorist party.' . . . In the event the court determines that the funds are subject to TRIA, the funds may be distributed without a license from OFAC." Ex. 2. Even if Plaintiffs may be permitted by TRIA to attach the blocked assets themselves, they are not permitted to serve a writ of execution against the government entity that blocked a terrorist's assets. TRIA does not create any private rights against OFAC. Instead, it creates rights against the terrorist party by permitting a victim of a terrorist act to attach blocked assets of the terrorist party.

## **CONCLUSION**

Plaintiffs' motion for writ of execution should be denied because the United States has not expressly waived its sovereign immunity and because OFAC is not in legal possession of any blocked assets of Mr. Khadr.

Dated: January 9, 2008

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

   /s/ Eric J. Beane
ERIC J. BEANE
AZ Bar #023092
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW., Room 7124
Washington, DC 20001
Telephone: (202) 616-2035
Fax: (202) 616-8470
Eric.Beane@usdoj.gov
*Counsel for United States*

Case 1:06-mc-00481-RCL    Document 13-2    Filed 01/09/2008    Page 1 of 3



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C.

SECRETARY OF THE TREASURY

DESIGNATION AND BLOCKING MEMORANDUM

The Department of the Treasury, pursuant to Executive Order 13224 ("Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten To Commit, or Support Terrorism") and section 203 of the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq. ("IEEPA"), and section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. 287c) ("UNPA") finds that there is reasonable cause to believe that on or since the effective date (12:01 a.m. EDT, September 24, 2001) the entities and individuals identified below and in evidentiary memoranda FAC Nos. 196269, 196270, 196271, 196273, 196274, 196276, 196357, 196359, 196360, 196416, and 196437, have been determined to be subject to E.O. 13224 for the reasons set forth in the evidentiary memoranda.

ENTITIES (6):

**AL-HAMATI SWEETS BAKERIES,** Al-Mukallah, Hadhramawt Governorate, Yemen.

**AL-NUR HONEY PRESS SHOPS** (a.k.a. AL-NUR HONEY CENTER), Sanaa, Yemen.

**AL-SHIFA' HONEY PRESS FOR INDUSTRY AND COMMERCE,** P.O. Box *8089*, Al-Hasabah, Sanaa, Yemen; By the Shrine Next to the Gas Station, Jamal Street, Ta'iz, Yemen; Al-'Arudh Square, Khur Maksar, Aden, Yemen; Al-Nasr Street, Doha, Qatar.

**JAISH-I-MOHAMMED** (a.k.a. ARMY OF MOHAMMED) (a.k.a. JAISH-E-MOHAMMED) (a.k.a. JAISH MOHAMMED) (a.k.a. JEM) (a.k.a. JIM), Pakistan.

**JAM'YAH TA'AWUN AL-ISLAMIA** (a.k.a. SOCIETY OF ISLAMIC COOPERATION) (a.k.a. JAM'IYAT AL TA'AWUN AL ISLAMIYYA) (a.k.a. JIT), Qaridahar City, Afghanistan.

**RABITA TRUST,** Room 9A, 2nd Floor, Wahdat Road, Education Town, Lahore, Pakistan; Wares Colony, Lahore, Pakistan.

Individuals (15):

**AGHA, Haji Abdul Manan** (a.k.a. SAIYID, Ahd Al-Man'am), Pakistan.

2

**AL-HAMATI, Muhammad** (a.k.a. AL-AHDAL, Mohammad Hamdi Sadiq) (a.k.a. AL-MAKKI, Abu Asim), Yemen.

**AL-HAQ, Amin** (a.k.a. AMIN, Muhammad) (a.k.a. AH HAQ, Dr. Amin) (a.k.a. UL-HAQ, Dr. Amin); DOR: 1960; POB: Nangahar Province, Afghanistan.

**AL-JADAWI, Saqar**; DOB: 1965.

**AL-KADR, Ahmad Sa'id** (a.k.a. AL-KANADI, Abu Abd Al-Rahman); DOR: 01 March 1948; POR: Cairo, Egypt.

**AL-QADI, Yasin** (a.k.a. KADI, Shaykh Yassin Abdullah) (a.k.a KAHDI, Yasin), Jeddah, Saudi Arabia.

**AL-SHARIF, Sa'd**; DOB: 1969; POB: Saudi Arabia.

**BIN MARWAN, Bilal**; DOB: 1941

**BIN MUHAMMAD, Ayadi Chafiq** (a.k.a. AYADI SHAFIQ, Ben Muhammad) (a.k.a. AYADI CHAFIK, Ben Muhammad) (a.k.a. AIADI, Ben Muhammad) (a.k.a. AIADY, Ben Muhammad), Helene Meyer Ring 10-1415-80809, Munich, Germany; 3.29 Park Road, NW8, London, England; 28 Chaussée de Lille, Mouscron, Belgium; Darvingasse 1/2/58-60, Vienna, Austria; Tunisia; DOB: 21 January 1963; POD: Safais (Sfax), Tunisia.

**DARKAZANLI, Mamoun**, Uhlenhorsterweg 34 11, Hamburg, 22085 Germany; DOB: August 4, 1958; POB: Aleppo, Syria; Passport No: 1310636262 (Germany).

**HIJAZI, Riad** (a.k.a. HIJAZI, Raed M.) (a.k.a. AL-HAWEN, Abu-Ahmad) (a.k.a. AL-MAGHRLBI, Rashid) (a.k.a. AL-AMRIKI, Abu-Ahmad) (a.k.a. AL-SHAHID, Abu-Ahmad), Jordan; DOB: 1968; POB: California, U.S.A.; SSN: 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.

**LADEHYANOY, Mufti 'RashidAhmad** (a.k.a. LUDHIANVI, Mufti Rashid Ahmad) (a.k.a. AHMAD, Mufti Rasheed) (a.k.a. WAUEHYANOY, Mufti Rashid Ahmad), Karachi, Pakistan.

**UTHMAN, Omar Mahmoud** (a.k.a. AL-FILISTINI, Abu Qatada) (a.k.a. TAKFIRI, Abu 'Umr) (a.k.a. ARU UMAR, Abu Omar) (a.k.a. UTHMAN, Al-Samman) (a.k.a. UMAR, Abu Umar) (a.k.a. UTHMAN, Umar) (a.k.a. ABU ISMAIL), London, England; DOR: 30 December 1960 or 13 December 1960.

**YULDASHEV, Tohir** (a.k.a. YULDASHEV, Takhir), Uzbekistan.

**ZIA, Mohammad** (a.k.a. ZIA, Ahmad), c/o Ahmed Shah s/o Painda Mohammad al-Karim Set, Peshawar, Pakistan; c/o Alam General Store Shop 17, Awami Market, Peshawar, Pakistan; c/o Zahir Shah s/o Murad Khan Ander Sher, Peshawar, Pakistan.

Consequently, pursuant to Executive Order 13224 of September 23, 2001, the property and interests in property of the subjects listed above and in the attached memoranda are determined to be subject to Executive Order 13224, and therefore to be subject to the prohibitions applicable under Executive Order 13224.

The President determined in section 10 of Executive Order 13224 (September 23, 2001) that because of the ability to transfer funds or assets instantaneously, prior notice to persons listed in the Annex to, or determined to be subject to, E.O. 13224 who might have a constitutional presence in the United States, would render ineffectual the blocking and other measures authorized in the Executive Order. Therefore, the President determined that no prior notification of a determination need be provided to any person who might have a constitutional presence in the United States. In making this determination pursuant to section 1(c) of the Executive Order, I also find that no prior notice should be afforded the subjects of this determination because to do so would give the subjects the opportunity to evade the measures described in Executive Order 13224 and, consequently, render those measures ineffectual toward addressing the national emergency declared in that Executive Order. Accordingly, I direct that appropriate notice be provided to the entities and individuals determined herein to be subject to E.O. 13224, and who have a constitutional presence in the United States, after this determination becomes effective.

In consequence whereof, all real and personal property of the subjects identified above and in the attached memoranda, including but not limited to all accounts in which the above-named subjects have any interest, are blocked; and all transactions involving U.S. persons, wherever located or from the United States, and the subjects named above and in the attached memoranda are prohibited unless licensed by the Office of Foreign Assets Control.

_October 12, 2001_
Date

_Paul H. O'Neill_
Secretary of the Treasury



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

MAY 2 2 2007

CASE No. SDGT-812

Donald J. Wilder, Esq.
Winder & Haslam PC
175 West 200 South, Suite 4000
P.O. Box 2668
Salt Lake City, UT 84110-2668

Dear Mr. Wilder:

This responds to your letter of November 22, 2006, to the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), on behalf of the estate of Christopher Speer and Layne Morris, requesting a license to enforce a February 16, 2006, judgment entered by the District Court in <u>Morris v. Khadr</u>, 415 F. Supp. 2d 1323 (D. Utah 2006), against Ahmad Sa'id Khadr, a Specially Designated Global Terrorist.

The Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002), in pertinent part, permits a plaintiff who "has obtained a judgment against a terrorist party on a claim based upon an act of terrorism" to attach "the blocked assets of that terrorist party." TRIA § 201(a). It is within the Court's authority to determine whether and to what extent TRIA applies to the claims of the estate of Christopher Speer and Layne Morris. In the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from OFAC.

Sincerely,

Adam J. Szubin
Director
Office of Foreign Assets Control

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAYNE MORRIS, et al.**  )<br>)<br>)<br>         **Plaintiffs,**  )<br>)<br>   vs.  )<br>)<br>**AHMAD SA'ID KHADR, et al.**  )<br>)<br>)<br>         **Defendants.**  )<br>_____) | **Civ. No. 06-MC-481 (RCL)** |

## PROPOSED ORDER

Upon consideration of Plaintiffs' motion for writ of execution, the United States' opposition thereto, and for good cause shown, it is hereby

ORDERED that Plaintiffs' motion is DENIED.

Date: _____, 2008        _____
                                ROYCE C. LAMBERTH
                                United States District Judge